**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| OSMOND WAYNE DAVIS, | : | **Hon. William J. Martini** |
| | : | |
| Petitioner, | : | |
| | : | Civil No. 12-6478 (WJM) |
| v. | : | |
| | : | |
| ROY L. HENDRICKS, | : | **OPINION** |
| | : | |
| Respondent. | : | |
| | : | |

**APPEARANCES**:

> MIRIAM ZAKARIN
> 305 Broadway - 9th Floor
> New York, NY  10007
> Attorney for Petitioner

> KRISTIN LYNN VASSALLO
> Office of the U.S. Attorney
> 970 Broad Street Suite 700
> Newark, NJ  07102
> Attorney for Respondent

**MARTINI**, District Judge:

Osmond Wayne Davis, confined at Essex County Jail in New Jersey, filed a Petition for a

Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal period mandatory

detention, pursuant to 8 U.S.C. § 1226(c), in the custody of the Department of Homeland

Security ("DHS").  Respondent filed an Answer and Davis filed a Reply.  This Court holds that

Davis's detention is governed by 8 U.S.C. § 1226(a) because DHS did not take him into custody

on December 7, 2011, when he was released from criminal incarceration for an offense

underlying the removal charges, and grants a Writ of Habeas Corpus directing the Immigration

Judge to conduct a bond hearing pursuant to 8 U.S.C. § 1226(a) to determine if Davis is a flight risk or danger to the community.

## I.  BACKGROUND

Osmond Wayne Davis, a native and citizen of Jamaica, challenges his detention in the custody of DHS at Essex County Jail.  Davis emigrated to the United States from Jamaica as a lawful permanent resident in 1983, at the age of 16.  In 1997, based on guilty pleas, Davis was convicted of third-degree trafficking in marijuana and third-degree possession of marijuana, in violation of Ohio law, and sentenced to consecutive one-year terms of imprisonment.  On December 31, 1998, Ohio released him into the custody of the Immigration and Naturalization Service ("INS"), the predecessor of DHS, which served him with a Notice to Appear for removal, pursuant to § 237(a)(2)(B)(i) and (a)(2)(A)(iii), see 8 U.S.C. § 1227(a)(2)(B)(i) and (a)(2)(A)(iii), based on the Ohio convictions, i.e., conviction of any law relating to a controlled substance (other than a single offense involving possession for one's own use of 30 grams or less of marijuana) and conviction of an aggravated felony.  Davis requested release on bond, but on January 25, 1999, Immigration Judge Robert Newberry denied the request for release, informed Davis that he was not eligible for any form of immigration relief, and entered an order of removal based on the two charges in the notice to appear.  Before the time to appeal to the Board of Immigration Appeals ("BIA") expired, on February 17, 1999, officials deported Davis to Jamaica.

Davis apparently returned to the United States on several occasions after the execution of the removal order.  On October 24, 2000, INS reinstated the January 25, 1999, order of removal, and sent him back to Jamaica on January 17, 2001.  On March 11, 2003, INS again reinstated the

January 25, 1999, order of removal and sent him back to Jamaica on April 21, 2003.  On

November 16, 2010, federal criminal authorities arrested Davis in New York for illegal re-entry

of a deported person, contrary to 8 U.S.C. § 1326(a) and (b)(2).  See United States v. Davis,

Crim. 10-1264 (PAC) (S.D.N.Y. filed Dec. 15, 2010).  Federal criminal authorities detained

Davis on this charge until December 7, 2011, when Judge Crotty signed an Order of *nolle*

*prosequi* and Davis was released from pretrial incarceration to the custody of DHS, which had

lodged a detainer.

The record in the criminal proceeding shows that Davis filed a motion to dismiss the

indictment on May 31, 2011, pursuant to 8 U.S.C. § 1326(d), on the grounds that the removal

proceeding at which the order of removal was entered had improperly deprived him of the

opportunity for judicial review and was fundamentally unfair.  Although the United States

initially opposed the motion, on December 7, 2011, the government requested entry of an order

of *nolle prosequi* on the ground that it had "reached the conclusion that Mr. Davis' 1999 hearing

did contain a fundamental procedural error . . . and that error did likely prejudice Mr. Davis."

United States v. Davis, Crim. 10-1264 (PAC) transcript at 2 (S.D.N.Y. Dec. 7, 2011) (Dkt. 1-3).

The government informed Judge Crotty that  INS had mistakenly determined in the removal

proceeding that Davis was convicted of an aggravated felony, and as such, he was ineligible to

apply for cancellation of removal under 8 U.S.C. § 1229(b).  But since he was in fact "a

nonaggravated felon[, he] should have been advised of a particular form of relief[, i.e.,]

cancellation of removal[, which is] only afforded to nonaggravated felons."  Id. at 3.  The

government further informed Judge Crotty that, in its view, Davis was prejudiced by this error,

since "at the time of the original hearing [he] would have obtained cancellation of removal,

meaning he would not have been deported." Id. at 4.  In response to Judge Crotty's question as to whether cancellation of removal was still available to Davis, the government responded:

> Given the *nolle*, if Your Honor elects to sign it, and the criminal case falls away, ICE will make a separate determination.  What ICE could do is, they would not reopen the 1999 hearing, but they would have a new deportation hearing.  He still has those convictions; he is still potentially deportable.  It is discretionary relief. ICE would then have that hearing before an immigration judge and Mr. Davis could put on whatever arguments, submissions he wants to make.  Then they would make the decision whether the discretionary relief of cancellation of removal or other relief that he might identify is available to him.  That hearing would like[ly] look at everything going from Mr. Davis' entry into this country in 19[8]3 until now.

Id. at 4.

DHS took Davis into immigration custody on December 7, 2011, pursuant to a detainer, when Judge Crotty released him from pretrial detention.  On January 26, 2012, DHS issued a new notice to appear for removal, which charged Davis with removal pursuant to § 212(a)(6)(A)(i) (inadmissible alien who is present in the United States without being admitted or paroled), § 212(a)(9)(A)(ii) (inadmissible alien who has more than once been ordered removed and who seeks admission within 20 years), and § 212(a)(2)(C) (inadmissible alien who has been an illicit trafficker in any controlled substance), see 8 U.S.C. § 1182(a)(6)(A)(i), (a)(9)(A)(ii), (a)(2)(C).  (Dkt. 11-15 at 2-8).

On February 1, 2012, Davis filed his first § 2241 petition in the United States District Court for the Southern District of New York.  See Davis v. Holder, Civ. No. 12-0817 (PAC) (S.D.N.Y. filed Feb. 1, 2012).  Davis challenged his detention on the ground that he "has been held for fifty four (54) days . . . without being served with a Notice to Appear, charging him with any crime or offense pertaining to his immigration status [and he] has not been informed as to the

reason for his detention other than that 'we do not know what to do with you.'"  Id. at dkt. 1.  At the request of Davis, on February 27, 2012, Judge Crotty transferred the § 2241 petition to this Court.  See Davis v. Holder, Civ. No. 12-1262 (WJM) (D.N.J. filed Mar. 1, 2012).  In response to this Court's Order, on May 8, 2012, DHS filed an answer seeking dismissal of the petition on the ground that Davis is confined under 8 U.S.C. § 1226(c), which requires his pre-removal period detention without a bond hearing.

Davis filed the instant § 2241 Petition on October 15, 2012.  (Dkt. 1.)  Davis asserts that he is not subject to mandatory pre-removal period under 8 U.S.C. § 1226(c) because DHS did not take him into custody on December 7, 2011, when he was released from criminal incarceration for an offense underlying his present removal charges, but took him into custody on December 7, 2011, when he was released from pretrial detention on the illegal re-entry charge.  DHS argues in the Answer:  (1) Davis is subject to mandatory detention pursuant to § 1226(c) because the INS took Davis into custody on December 31, 1998, when Ohio released him from criminal incarceration on the crimes underlying his 1998 notice to appear; (2) because § 1226(c) is ambiguous, this Court should defer to the BIA's interpretation of the statute in Matter of Rojas, 23 I.&N.Dec. 117 (BIA 2001); and (3) even if this Court does not defer to the BIA, the 13-year gap between Davis' criminal incarceration for charges listed in § 1226(c) and his detention on December 7, 2011, did not deprive DHS of the authority to mandatorily detain Davis pursuant to § 1226(c), which merely sets forth a non-binding statutory deadline or preference.

## II.  DISCUSSION

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention is not statutorily authorized by 8 U.S.C. § 1226(c).  See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Diop v. ICE/Homeland Security, 656 F. 3d 221, 226 (3d Cir. 2011).

B.  Relevant Statutes

Section 1226 governs the pre-removal-period detention of an alien.  Section 1226(a) authorizes the Attorney General to arrest and detain an alien pending a decision on whether the alien is to be removed from the United States, or to release him or her on bond, "except as provided in subsection (c)."  See 8 U.S.C. § 1226(a).  The exception in § 1226(c) commands that the Attorney General "shall take into custody any alien [specified in this subsection] when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."  8 U.S.C. § 1226(c)(1).  Significantly, an alien detained under § 1226(c) must be detained until his removal is final, regardless of whether he is a flight risk or danger to the community, unless the Attorney General determines that the alien should be part of the federal witness protection program, provided detention has not become unreasonably prolonged.  See

6

Diop v. ICE/Homeland Sec., 656 F. 3d at 232 ("At a certain point, continued detention becomes

unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional

unless the Government has justified its actions at a hearing inquiring into whether continued

detention is consistent with the law's purposes of preventing flight and dangers to the

community").  Section 1226 provides in full:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be
> arrested and detained pending a decision on whether the alien is to
> be removed from the United States.  Except as provided in
> subsection (c) of this section and pending such decision, the
> Attorney General –
>
>   (1) may continue to detain the arrested alien; and
>
>   (2) may release the alien on –
>
>     (A) bond of at least $1,500 . . ; or
>
>     (B) conditional parole; but
>
>   (3) may not provide the alien with work authorization . . . unless
> the alien is lawfully admitted for permanent residence or otherwise
> would . . . be provided such authorization.
>
> (b) Revocation of bond or parole
>
> The Attorney General at any time may revoke a bond or parole authorized under
> subsection (a) of this section, rearrest the alien under the original warrant, and
> detain the alien.
>
> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who -

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.  A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226.

In this case, Davis does not argue that his detention since December 7, 2011, has become

prolonged under Diop.  Thus, the outcome of this case depends on the meaning of the following

words in § 1226(c)(1):  "The Attorney General shall take into custody any alien [specified in this

section], when the alien is released, without regard to whether the alien is released on parole,

supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1). This Court will consider each of the government's arguments in support of its contention that § 1226(c) requires Davis' detention without the possibility of release on bond pending the outcome of his new removal proceeding.

C.  Argument That There Was No Time Gap

The government argues that § 1226(c) requires Davis' detention beginning on December 7, 2011, without the possibility of release on bond because there was no time gap, since INS took Davis into custody on December 31, 1998, when Ohio released him from criminal incarceration for the charges in the notice to appear dated December 22, 1998. The 1998 notice to appear charged Davis with removal pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) and (a)(2)(A)(iii), i.e., conviction of a law relating to controlled substances and conviction of an aggravated felony. The INS did take Davis into custody when he was released from criminal incarceration on December 31, 1998, for the charges in the 1998 notice to appear. The problem with this argument is that the government is not seeking to remove Davis on the charges in the 1998 notice to appear. Rather, the government is pursuing Davis' removal in a new removal proceeding based on new and different charges, i.e., 8 U.S.C. § 1182(a)(6)(A)(i), (A)(9)(A)(ii), and (a)(2)(C). Accordingly, the fact that INS took Davis into custody when he was released for removal based on the 1998 notice to appear is not relevant to this new removal proceeding based on a newly issued notice to appear raising different grounds for removal.

D.  Deferral to Matter of Rojas

DHS also argues that § 1226(c) is ambiguous, and that this Court should defer to the BIA's reading of the statute in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001). Matter of Rojas

involved the alien's appeal to the BIA of the Immigration Judge's rejection of the argument that Rojas was not subject to mandatory detention under § 1226(c) because the government failed to apprehend him at the time of his release from incarceration on parole for an offense covered by § 1226(c), and instead waited two days before taking him into custody.  See Matter of Rojas, 23 I. & N. Dec. 117.  The BIA determined that the language in § 1226(c)(1) is not clear, but is susceptible to different readings.  Id. at 120.  The BIA then construed the statutory language as follows:  "We construe the phrasing 'an alien described in paragraph (1),' as including only those aliens described in subparagraphs (A) through (D) of section [1226(c)(1)], and as not including the 'when released' clause."  Matter of Rojas, 23 I. & N. Dec. at 125.  Because the BIA concluded that the "when the alien is released" clause does not describe the alien who is subject to mandatory detention under § 1226(c)(1), the BIA found that Rojas "is subject to mandatory detention pursuant to section [1226(c)], despite the fact that he was not taken into Service custody immediately upon his release from state custody."  Matter of Rojas, 23 I. & N. Dec. at 127.

Board member Lory Diana Rosenberg wrote a dissenting opinion in which six board members joined.  Board member Rosenberg saw the statute as clearly requiring mandatory detention only for aliens who were taken into DHS custody when they were released from criminal incarceration for an offense listed in § 1226(c):

> The word '"when' [is defined] as 'just after the moment that.'" Alikhani v. Fasano, 70 F. Supp. 2d 1124, 1130 (S.D. Cal. 1999) (quoting *Webster's Third New International Dictionary* 2602 (3d ed. 1976).  Therefore, as one court noted, the clear language of the statute requires that "the mandatory detention of aliens 'when' they are released requires that they be detained at the time of release." Alikhani v. Fasano, supra, at 1130; see also Velasquez v. Reno, 37

> F. Supp. 2d 663, 672 (D.N.J. 1999) ("This court cannot simply
> ignore the plain language of the statute which provides that an
> alien is to be taken into custody 'when the alien is released.'").  As
> another court noted, "Congress could have required custody
> 'regardless of when the alien is released' or 'at any time after the
> alien is released,'" but did not do so.  Alwaday v. Beebe, 43 F.
> Supp. 2d 1130, 1133 (D. Or. 1999) . . . .  These courts have
> concluded uniformly that "[t]he plain meaning of this language is
> that it applies immediately after release from incarceration, not to
> aliens released many year[s] earlier."  Pastor-Camarena v. Smith,
> supra, at 1417-18.

Matter of Rojas, 23 I. & N. Dec. at 132-33 (Rosenberg, dissenting).[1]

Deference to an agency's interpretation of a statute "is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 599 (2004).  If "Congress has directly spoken to the precise question at issue," then a court (and an agency)  "must give effect to the unambiguously expressed intent of Congress."  Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).  In the immigration context, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.  If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."  INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987) (quoting Chevron, 467 U.S. at 843 n. 9).

---

[1] The Velasquez opinion cited in the dissenting opinion of Board Member Rosenberg was written by then New Jersey District Judge, now Third Circuit Court of Appeals Judge (Senior), Maryanne Trump Barry.

The Third Circuit has yet to rule on this issue, but the First Circuit and the vast majority of Judges in this District have rejected the government's argument that § 1226(c) is ambiguous.[2] See, e.g., Saysana v. Gillen, 590 F.3d 7, 16 (1st Cir. 2009); Kerr v. Elwood, 2012 WL 5465492 (D.N.J. Nov. 8, 2012); Baguidy v. Elwood, 2012 WL 5406193 (D.N.J. Nov. 5, 2012); Charles v. Shanahan, 2012 WL 4794313 *6 (D.N.J. Oct. 9, 2012); Kporlor v. Hendricks, 2012 WL 4900918 *6 (D.N.J. Oct. 9, 2012); Campbell v. Elwood, 2012 WL 4508160 (D.N.J. Sept. 27, 2012); Martinez v. Muller, 2012 WL 4505895 *4 (D.N.J. Sept. 25, 2012); Kot v. Elwood, 2012 WL 1565438 (D.N.J. May 2, 2012); Christie v. Elwood, 2012 WL 266454 (D.N.J. Jan. 30, 2012).

The Fourth Circuit and two Judges in this District have held that § 1226(c) is ambiguous, and have deferred to the BIA's interpretation of the statute in Matter of Rojas.  See Hosh v. Lucero, 680 F.3d 375 (4th Cir. 2012); Desrosiers v. Hendricks, Civ. No. 11-4643 (FSH) opinion (D.N.J. Dec. 30, 2011), on appeal, C.A. No. 12-1053 (3d Cir. docketed Jan. 11, 2012); Diaz v. Muller, 2011 WL 3422856 (D.N.J. Aug 04, 2011).  Specifically, based on the following analysis, the Fourth Circuit held that § 1226(c) is ambiguous:

> The meaning of § 1226(c) is not plain to us.  To be sure, "when in § 1226(c) can be read, on one hand, to refer to "action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun."  Waffi v. Loiselle, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007) (citing The Oxford English Dictionary 209 (2d ed. 1989); The American Heritage Dictionary of the English Language (4th ed. 2000)).  On the other hand, "when" can also be read to mean the temporally broader "at or during the time that," "while," or "at any or every time that . . . ."  Free Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/ when (last visited April 30, 2012).  We must therefore consider the BIA's interpretation.

---

[2] The issue is pending before the Third Circuit in Sylvain v. Holder, C.A. No. 11-3357 (3d Cir. docketed Aug. 31, 2011) (DHS appealed Judge Pisano's order granting habeas relief and ordering a bond hearing), and Desrosiers v. Hendricks, C.A. No. 12-1053 (3d Cir. docketed Jan. 11, 2012) (petitioner's appeal of Judge Hochberg's order denying habeas relief).

Hosh, 680 F.3d at 379-80.

After finding § 1226 to be ambiguous, the Fourth Circuit deferred to the BIA's interpretation of the statute in Rojas because the interpretation was not "'arbitrary, capricious, or manifestly contrary to the statute.'"  Hosh, 680 F.3d at 378 (quoting Chevron, 467 U.S. at 844).

This Court notes that few (if any) courts outside the Fourth Circuit have been persuaded to follow Hosh.[3]  See, e.g., Nimako v. Shanahan, 2012 WL 4121102 *7 (D.N.J. Sept. 18, 2012) ("This Court joins these above-cited district courts in finding that Hosh is not persuasive. Rather, the Court has found . . . that the First Circuit's rationale and holding in Saysana v. Gillen . . . comport with this Court's reading of the statute"); Cox v. Elwood, 2012 WL 3757171 *4 (D.N.J. Aug. 28, 2012) ("This Court is also not persuaded by the Fourth Circuit's decision in Hosh to defer to the BIA's interpretation of "when . . . released" as it is not binding authority on this Court . . . .  Until the Third Circuit decides this issue, this Court will rely on the plain meaning of § 1226(c)"); Martial v. Elwood, 2012 WL 3532324 (D.N.J. Aug. 14, 2012) (same); Bogarin-Flores v. Napolitano, 2012 WL 3283287 *3 (S.D. Cal. Aug. 10, 2012) ("The Fourth Circuit . . . found Rojas was decided correctly but did not present any independent reasoning or statutory construction, instead giving deference to the BIA's decision . . . .  This Court finds that the plain language of the statute is not ambiguous and clearly applies the mandatory detention provision to those aliens who are detained upon release from criminal custody"); Munoz v. Tay-Taylor, 2012 WL 3229153 *3 (D.N.J. Aug. 6, 2012) ("This Court is also not persuaded by the

---

[3] Judge Hochberg deferred to Rojas in a post-Hosh decision, but Judge Hochberg followed her own pre-Hosh holding in Desrosiers v. Hendricks, Civ. No. 11-4643 (FSH) opinion (D.N.J. Dec. 30, 2011), which is one of the cases pending before the Third Circuit.  See Espinoza-Loor v. Holder, 2012 WL 2951642 (D.N.J. July 2, 2012) (No. 11-6993 (FSH)).

13

Fourth Circuit's decision in <u>Hosh</u> to defer to the BIA's interpretation"); <u>Gonzalez-Ramirez v.</u>
<u>Napolitano</u>, 2012 WL 3133873 n.8 (D.N.J. July 30, 2012) ("The Court recognizes the recent
decision by the Court of Appeals for the Fourth Circuit . . . . Absent a directive from the Third
Circuit, the Court respectfully declines to adopt the <u>Hosh</u> holding and will instead follow the
reasoning utilized by the First Circuit in <u>Saysana</u>").

       This Court agrees with the First Circuit's rationale and holding in <u>Saysana</u> and is not
persuaded by the Fourth Circuit's decision in <u>Hosh</u>.  First, the facts of this case are similar to
those in <u>Saysana</u>, in that, like Saysana, Davis was taken into DHS custody (on December 7,
2011) when he was released from incarceration for a charge that "was not the crime that formed
the basis for his removal proceedings."  <u>Saysana</u>, 590 F.3d at 9-10.  And Davis, like Saysana, had
several years in the past been incarcerated for an offense listed in § 1226(c).  Saysana was
released by Massachusetts for the crime underlying his removal in 1991, and DHS took Saysana
into custody in 2007, when Massachusetts released him from pretrial detention on a different
criminal charge, which was later dismissed.  The First Circuit described the legal issue before it
this way:  "We must decide whether the mandatory detention provision applies only when an
alien is released from a criminal custody the basis for which is one of the offenses listed in §
1226(c)(1)(A)-(D); or, alternatively, whether it applies whenever an alien, previously convicted
of an offense that falls within (c)(1)(A)-(D), is released from *any* criminal custody regardless of
the reason for that detention.  Resolution of this issue centers on the 'when released' language in
§ 1226(c)."  <u>Id.</u> at 11.  In answering this question, the First Circuit held that the mandatory
detention provision of § 1226(c) did not apply to Saysana because DHS did not take Saysana into
custody when he was released for an offense listed in § 1226(c)(1), but instead took him into

14

custody when he was released from incarceration for a different charge that was dismissed. Although DHS might argue that <u>Saysana</u> should be distinguished on the ground that Saysana was released from criminal incarceration for the charge listed in § 1226(c) prior to the October 8, 1998, effective date of § 1226(c), the First Circuit's reasoning did not hinge on this fact, but was based on the fact that DHS did not take Saysana into custody "when he was released" from criminal incarceration for an offense listed in § 1226(c).  Moreover, the First Circuit held that deference to the BIA's reading of § 1226(c) was not called for because the "when the alien is released" language is clear[4]:  "The 'when released' provision immediately follows the list of enumerated offenses, indicating that the former modifies the latter.  Additionally, § 1226(c) provides that the alien shall be detained upon release regardless of whether he is subsequently arrested for the 'same offense,' reinforcing the notion that the entire clause applies to the list of enumerated offenses immediately preceding it." <u>Saysana</u> at 14 (citation and internal quotation marks omitted).

The government's reading of § 1226(c) in this case is inconsistent with the rationale of <u>Saysana</u> in another way, as the First Circuit read § 1226(c) as envisioning a continuous chain of custody of dangerous aliens:  "In our view, a natural reading of the statutory provision from top to bottom makes clear that the congressional requirement of mandatory detention is addressed to the situation of an alien who is released from custody for one of the enumerated offenses.  The statutory language embodies the judgment of Congress that such an individual should not be

---

[4] <u>See</u> <u>Saysana</u>, 590 F.3d at 16 ("We have concluded that the text of the statute is clear. Consequently, because the 'when released' language is unambiguous, there is nothing for the agency to interpret - no gap for it to fill - and there is no justification for resorting to agency interpretation to address an ambiguity").

15

returned to the community pending disposition of his removal proceedings." Saysana, 590 F.3d at 13.[5]  Furthermore, Saysana expressly rejected the government's argument, also made in this case, that a broad reading of § 1226(c) is "consistent with Congress'[s] longstanding intent to detain certain criminal aliens;" rather, the First Circuit found that "the 'when released' language serves this more limited but focused purpose of preventing the return to the community of those released in connection with the enumerated offenses, as opposed to the amorphous purpose the Government advances." Id. at 17.  As the First Circuit noted, aliens who have remained crime-free for years are those who are among the least likely to pose a flight risk or danger to the community, the presumed reasons for mandatory detention. See Saysana, 590 F.3d at 17-18 ("By any logic, it stands to reason that the more remote in time a conviction becomes . . , the lower his bail risk is likely to be").

Moreover, if the "when the alien is released" language does not limit the class of aliens who are subject to mandatory detention, and a 13-year time gap is irrelevant to whether Davis is subject to mandatory detention, then there would have been no need for Congress to have enacted the Transition Period Custody Rules ("TPCR"), which delayed implementation of the mandatory detention provision of § 1226(c) for (up to) two years after its effective date.  Section 303(b)(1) of IIRIRA expressly provides that the mandatory detention provision of § 1226(c) applies to aliens who are "released after" its effective date. See IIRIRA Pub. L. No. 104-28, 110 Stat. 3009-546, § 303(b)(1).  However, § 303(b)(2) of IIRIRA provided that, "[i]f the Attorney

---

[5] See also Saysana, 590 F.3d at 16 ("The Court is not persuaded that the legislature was seeking to justify mandatory immigration custody many months or even years after an alien had been released from state custody") (quoting Quezada-Bucio v. Ridge, 317 F.Supp. 2d 1221, 1230 (W.D. Wash. 2004)).

General, not later than 10 days after the date of the enactment of this Act, notifies in writing the Committees . . . that there is insufficient detention space and . . . personnel available to carry out [the mandatory detention provision of § 1226(c)], the Transition Period Custody Rules" (TPCR) shall be in effect for up to two years. <u>Id.</u> at § 303(b)(2). "After the end of such 1-year or 2-year periods, the provisions of [§ 1226(c)] shall apply to individuals released after such periods." <u>Id.</u> The TPCR required DHS to take into custody a criminal alien specified in the section "when the alien is released," but allowed DHS to release some of these aliens on bond if the alien "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." <u>Id.</u>

The TPCR expired on October 8, 1998. As explained above, both the TPCR and § 1226(c) include the "when the alien is released" language. But if § 1226(c) subjected aliens to mandatory detention even where there was a gap of several years between the alien's release from criminal incarceration (after its effective date) and his immigration detention, then there was no need for Congress to have delayed implementation of § 1226(c) for two years, since DHS could have simply waited for as many years as it needed to take aliens into custody who were released from criminal incarceration after the effective date of IIRIRA.

This Court agrees with the First Circuit and the majority of district courts that § 1226(c) is not ambiguous, and holds that the "when the alien is released" language in § 1226(c) clearly limits the class of criminal aliens subject to mandatory detention to those who are taken into custody "when the alien is released" from criminal incarceration for an offense listed in § 1226(c)(1). <u>See</u>, <u>e.g.</u>, <u>Charles v. Shanahan</u>, 2012 WL 4794313 *6 (D.N.J. Oct. 9, 2012) ("[t]he plain language of § 1226(c) unambiguously requires an alien to be detained immediately when

17

released from criminal custody to be subject to mandatory detention"); <u>Kporlor v. Hendricks</u>, 2012 WL 4900918 *6 (D.N.J. Oct. 9, 2012) ("Because taking the alien into custody approximately a decade after the alien is released does not fall within the command to take the alien into custody when the alien is released, the BIA's interpretation is contrary to the plain meaning of the statute"); <u>Campbell v. Elwood</u>, 2012 WL 4508160 (D.N.J. Sept. 27, 2012) ("The Court finds that 'when . . . released' means 'immediately' and not 'any time after' release"); <u>Martinez v. Muller</u>, 2012 WL 4505895 *4 (D.N.J. Sept. 25, 2012) ("Absent a directive from the Third Circuit, this Court is not inclined to depart from the principles set forth in [prior opinions], namely, that the unambiguous language of the mandatory detention statute requires *immediate* action upon an alien's release from criminal incarceration").  Davis is not subject to mandatory pre-removal period detention under § 1226(c) because DHS did not take him into custody on December 7, 2011, when he was released from incarceration for an offense listed in § 1226(c)(1), but instead took him into custody on December 7, 2011, when he was released from pretrial detention by Judge Crotty.

E.  The "When the Alien is Released" Clause is a Non-Binding Temporal Deadline

The government nevertheless argues that, "[e]ven if this Court finds that 8 U.S.C. § 1226(c) is not ambiguous and requires detention immediately upon release, it should still find that ICE is not deprived of its ability to detain petitioner under 8 U.S.C. § 1226(c) by a gap between his date of release and his detention [because] the Supreme Court has directed that statutory deadlines applied to the Government are generally interpreted as advisory deadlines meant to prod the Government to expeditious action [rather than] 'jurisdictional' deadlines, which forbid government action after the deadline expires."  (Dkt. 5 at 33-34.)  To support this

18

argument, which was not adopted by the BIA in Matter of Rojas, the government relies on various Supreme Court and Third Circuit cases involving government deadlines, including French v. Edwards, 80 U.S. 506, 511 (1872); Brock v. Pierce Co., 476 U.S. 253 (1986); Barnhart v. Peabody Coal Co., 537 U.S. 149 (2003); Dolan v. United States, 130 S.Ct. 2533 (2010); Cyberworld Enter. Tech., Inc. v. Napolitano, 602 F.3d 189, 198 (3d Cir. 2010).

This Court has examined the cases cited by the government, and rejects the notion that the legal issue in this case concerns "the remedy for missing a statutory deadline." [6] Dolan, 130 S.Ct. at 2536. Moreover, since the BIA in Matter of Rojas did not rely on the statutory deadline rationale, deference to this argument is not appropriate. See Bowen v. Georgetown University Hosp., 488 U.S. 204, 212 (1988) (Chevron deference does not apply to "an agency counsel's interpretation of a statute"). The "when the alien is released" language in § 1226(c) is not a statutory deadline, but limits the class of criminal aliens subject to mandatory detention to those who are taken into custody "when the alien is released" from criminal incarceration for an offense listed in § 1226(c)(1).[7]

To summarize, because DHS did not take Davis into custody on December 7, 2011, when he was released from criminal incarceration for an offense specified in § 1226(c)(1), Davis is not subject to detention under § 1226(c) and his detention is necessarily governed by § 1226(a). This Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Davis

---

[6] In any event, § 1226 contains its own "remedy:" aliens who do not fall within the exception to § 1226(a) set forth in § 1226(c) are still subject to pre-removal period detention under § 1226(a), which prohibits the release of aliens who are a danger to the community or a flight risk.

[7] Saysana expressly rejected the government's argument that the "when the alien is released" language is "a mere temporal triggering mechanism." Saysana, 590 F.3d at 15.

with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2), to determine if he is a flight risk or danger to the community, within 10 days of the date of the entry of the Order accompanying this Opinion.

### III.  CONCLUSION

This Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2).

s/William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

DATED: <u>November 30</u> , 2012

20